Quaker City Sweater Mills, Appellant, *v.* Lipman et al.

Argued March 12, 1930.

Before TREX-

LER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and GRAFF, JJ.

*Isaac Hassler,* and with him *Thomas E. Waters,* for appellant.—A vendee must inspect goods purchased within a reasonable time after its arrival: Wright v. General Carbonic Co., 271 Pa. 332; Breen v. Bowers, 82 Pa. Superior Ct. 552.

*Edward I. Weisberg,* and with him *David N. Feldman* and *Joseph G. Feldman,* for appellee, cited: Lemon v. Crall, 248 Mass. 232; Levine v. Isler, 178 N. Y. 57.

OPINION BY LINN, J., April 18, 1930:

The plaintiff, who is the appellant, is a manufacturer of sweaters and bathing suits; defendant is a jobber, who bought from the plaintiff for the purpose (known by plaintiff) of selling at wholesale to retailers, who, in turn, would sell to the public.

The suit is for the purchase price, $1,600 with interest, of "100 dozen white, black and gold" swimming shirts at $16 a dozen, pursuant to an order solicited by plaintiff in August, 1921, and accepting in writing. The affidavit of defense admitted the purchase and delivery; averred that when the order was given plaintiff knew defendant was a jobber purchasing for the purpose of selling to the retailer; and "that said swimming shirts would not be used by the ultimate consumer until the summer season of 1922. Defendant

avers that at the time said shirts arrived, it was impossible to determine by an inspection whether or not the said shirts were fast-color, and would not fade or run. In the due course of business defendant did, during the months of April and May, 1922, sell a portion of the swimming shirts to his customers, who, in turn, sold a portion to the users, whereupon it was discovered that the said shirts were not fast-color, but, upon being used in water, faded and ran, so as to make the said shirts absolutely unmerchantable and of no value. Defendant avers that as soon as he ascertained that the said shirts were not as guaranteed, to wit: during the early part of June, 1922, he immediately notified the plaintiff and requested the plaintiff to send for all of said shirts, which plaintiff failed and refused to do. Defendant avers that the plaintiff, having failed to send for said shirts, he did, during the month of June, 1922, tender to the plaintiff 81 5/12 dozen of said shirts, which the plaintiff refused to accept, and defendant avers that said shirts are now in his possession subject to the order and call of the plaintiff. Defendant avers that the balance of said shirts, with the exception of one-half dozen thereof, which were returned to the plaintiff, during the month of June, and accepted by the plaintiff, were sold by him, and not returned by his customers.''

The contract provides that plaintiff would ''ship stock as March 1st'' terms 2%-10-60, making them payable May 10, 1922. They were shipped in December, though why they were shipped so early, is disputed and not now material. Defendant's agents went out early in 1922 in the course of business and took orders from retailers, which were filled in due course. Late in May or early in June, retailers complained that purchasers from them had returned swimming shirts because the colors were not fast, and accordingly the retailers returned them to defendant who received them back and gave credit. Defendant then orally notified

plaintiff of this defect, and, on June 16, 1922, followed the notice with a formal letter of complaint stating "that it will be impossible to use them as we are having considerable trouble with our trade who are returning these shirts to us, due to the fact that the fibre stripes are not fast and fade. We are sending you under separate cover a few garments showing you the condition they are in, and will ask you to have your truckman call for them." Plaintiff declined to do so, whereupon defendant returned to plaintiff 81 dozen which plaintiff refused to receive.

The learned trial judge instructed the jury to find whether there had been a breach of the implied warranty that the goods should be merchantable and reasonably useful for the purposes for which the plaintiff knew they would be sold; and if so, whether there had been timely discovery of the breach of warranty and notice thereof in reasonable time; that if the goods were merchantable, plaintiff was entitled to recover the full amount, but not if they were unmerchantable and timely notice was given; that, in any event, plaintiff was entitled to recover the purchase price of those that had been sold by the defendant (as appears in the affidavit of defense quoted above) and not taken back, doubtless, on the theory that those were in fact merchantable and that defendant had sustained no loss, or for any other reason, had chosen to make no claim therefor in his affidavit of defense. The jury rendered a verdict for the plaintiff for $431.68 only, that being the purchase price, with interest, of those retained and sold. Defendant did not object or except to this instruction to find for plaintiff, or move for a new trial, or appeal; he made no complaint, and makes none now.

The verdict determined that the goods that were offered back to plaintiff, were unmerchantable and of no value and that the discovery of the defect and notice thereof to plaintiff were within reasonable time.

There is evidence that when they were delivered to defendant he "looked at a box and they looked beautiful;" he proposed to show that it was not possible to tell whether the dye was fast "merely by inspecting it" and plaintiff objected to the inquiry and the objection was sustained. The uncontradicted evidence is that a test which was made, and was described to the jury by the witness who made it, showed that the dyes ran and were not fast. A shirt, that had been subjected to such test, was offered in evidence and, with others, that had been returned to defendant, was examined by the jury. Indeed, an employe of the plaintiff, who made the sale to the defendant, and who was called as a witness by the plaintiff, said that ordinarily such goods were not marketable unless dyed with fast dyes; he testified that the dyes used in these swimming shirts were not fast dyes and that they would run; and he frankly stated that, though he made the sale, he did not warn defendant of that defect. A witness, a retail dealer, thus described his experience with a customer who returned one of the shirts, bought from the witness: "Q. What was the condition of it when he brought it back? A. The black ran all over the jersey, and it also ran over the man's body, and he complained that he could not get the dye off of his body. Q. As the result of that, what did you do with the shirt you had bought from Mr. Lipman [defendant]? A. I gave the customer his money back for the garment, and I returned what I had in stock, and the jersey the man brought me; and a week or two later we received two other jerseys back. I sold three. They came back with the same complaint. Q. What did you do with the other two? A. Sent them back to the Crown Knitting Mills for credit. Q. And did they give you credit? A. Yes." See generally Crunden Martin Mfg. Company v. Turner, 274 Pa. 425.

Plaintiff moved for a new trial, and for judgment for the full amount of its claim notwithstanding the

verdict, but before argument below, withdrew its motion for a new trial and pressed only the motion for judgment. That motion having been refused, judgment on the verdict was entered and this appeal was taken by plaintiff.

In this court, the learned counsel for appellant contends that judgment for the full amount should have been entered below on the ground that defendant attempted to rescind the contract, and that rescission is impossible because (1) defendant was in default in not paying for the goods on May 10, (2) defendant did not offer to return all the goods (only 81 dozen were offered back) or to restore the status quo by returning the 81 dozen and paying the purchase price of the remaining 19 dozen. We agree that there was no rescission. On the contrary, the affidavit of defense set up breach of implied warranty of merchantability; that in consequence of the breach, the goods had no value, and that, though defendant made no claim as to 19 dozen, he declined to waive the breach of warranty as to the 81 dozen that he tendered back, and pleaded that he was not liable to pay for them;—in other words —he would extinguish the purchase price by the damage resulting from the breach of warranty. As has been said, the learned trial judge submitted to the jury whether the shirts were merchantable and instructed them that "the defendant had a right to reject them if they were not marketable." Plaintiff makes no objection to that instruction on this appeal.

Several provisions of the Sales Act are to be considered. Section 15 (1915, P. L. 543, 546) is as follows: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

First. Where a buyer, expressly or by implication, makes known to the seller the particular purpose for

which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.

Second. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

Section 69 (P. L. 562) provides: "Where there is a breach of warranty by the seller, the buyer may, at his election,—(a) Accept or keep the goods, and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price.

Sixth. The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."

If, by offering to return 81 dozen of the shirts, defendant intended to rescind the contract, his attempt failed because plaintiff declined to accept such offer of rescission, and because defendant (as he did not return all the shirts) could not rescind in part; see Elzea v. Brown, 59 Pa. Superior Ct. 403 and cases there cited. The contract, therefore, remained in force; the warranty survived acceptance of the goods; and, as the breach of warranty was found by the jury, defendant, not having paid for the goods, was entitled, pursuant to section 69, supra, to "...... keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price." And we understand the affidavit of defense as making that issue, though the matter might have been more comprehensively stated. It asserted that, as to the 81 dozen, defendant would show the breach of warranty and that the goods had no value; if that was found by the jury, liability to pay

the purchase price was extinguished. The issue was tried and defendant succeeded on that branch of the case. The fact that by his affidavit of defense defendant waived his right to "set up against the seller the breach of warranty" as to the 19 dozen, was of course favorable to plaintiff, but does not destroy defendant's right to defend against the price for the 81 dozen that were considered by the jury.

Judgment affirmed.