Moskowitz *v.* Flock and Flock, Appellants.

Argued December 14, 1933.

Before T<small>REXLER</small>, P. J., K<small>ELLER</small>, C<small>UN</small>-NINGHAM, B<small>ALDRIGE</small>, S<small>TADTFELD</small>, P<small>ARKER</small> and J<small>AMES</small>, JJ.

*Abraham L. Freedman,* and with him *Morris H.*

*Goldman* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.—There cannot be a partial rescission of a contract: Elzea v. Brown, 59 Pa. Superior Ct. 403; Elk Textile Co. v. Cohen, 75 Pa. Superior Ct. 478; Ireland Bros. v. Refowich Bros., 90 Pa. Superior Ct. 221.

*David Justin Dean,* for appellee, cited: Hires v. Stromeyer, 65 Pa. Superior Ct. 241.

OPINION BY PARKER, J., March 16, 1934:

This action in assumpsit grew out of an alleged breach of warranty on a sale of yarn by the defendants, Sol M. Flock and Emanuel Flock, partners trading as the Flock Manufacturing Company, to the plaintiff, Ernest Moskowitz, trading as Ermos Hat Company, and involves the right of the buyer to rescind the contract without returning all the goods delivered to the buyer.

We will summarize the allegations of the statement of claim. On May 24, 1930, plaintiff purchased by sample from the defendants twenty-five pounds of a "very fine grade of imported angora yarn" and thereafter received and paid for the same. On June 4, 1930, he orally contracted for an additional two hundred pounds of the same quality of yarn at $15.50 per pound, to be shipped in two lots in one and two weeks respectively and to be paid for cash on delivery. When he placed the order he informed the defendants that he was in the millinery business and wished to use the yarn in the manufacture of berets; that he had taken orders for the hats by submitting samples of the yarn from the former order; and that he was relying upon the yarn being of the same quality. On June 14, 1930, seventy-two pounds of yarn were delivered to the plaintiff, for which plaintiff paid cash on delivery. On June 14th, immediately after the de-

livery, the plaintiff examined the yarn and found it was wet with dye which made it impossible to determine the quality of the yarn, but on the same day he sent thirty pounds of the yarn to his contractor to manufacture into hats. On June 14, 1930, the defendants shipped an additional one hundred ten pounds of yarn to the plaintiff, and on June 15, 1930, the plaintiff received from the contractor the hats made of the thirty pounds of yarn, when upon inspection he discovered that the yarn was defective and inferior to the samples submitted and was neither imported angora yarn nor a very fine grade of angora yarn. On June 15th, plaintiff offered to return the remaining forty-two pounds of yarn to the defendants, and the defendants refused to accept a return thereof. On delivery of the one hundred ten pounds of yarn shipped on June 14, 1930, plaintiff refused to receive that shipment, but by an arrangement satisfactory to, and with the cooperation of, both parties, a purchaser was found for the one hundred ten pounds who was willing to pay the price thereof, and so did.

Alleging that the yarn was of such an inferior quality that he was obliged to sell the berets at a reduced price and as a consequence thereof lost the sum of $500, the plaintiff made claim for consequential damages in the amount of $500 on account of the yarn used in the manufacture and claimed the right to rescind the contract as to the balance of the purchase and receive return of a proportionate amount of the consideration paid, to wit, forty-two pounds at $15.50 per pound.

The defendants, in their affidavit of defense, alleged that the second purchase of yarn was not made from sample but was made after an examination of yarn in stock and that the yarn shipped was of the precise kind contracted for. They also denied that the plaintiff had offered to return any portion of the seventy-

two pounds originally shipped except ten and one-half pounds on the ground that it was not of a color specified. It was also denied that the defendants had anything to do with the resale of the second shipment of one hundred ten pounds, but that the same was received and paid for by plaintiff without objection.

The case was called for trial in the municipal court before a judge without a jury, when the parties offered proofs corresponding in general with their respective allegations in the pleadings. The court, after making certain findings of fact, rejected the claim of the plaintiff for consequential damages, relying on the case of Quaker City S. Mills v. Lipman, 99 Pa. Superior Ct. 12. Neither party has complained of this ruling and that portion of the claim is therefore eliminated from present consideration, leaving the claim for a return of the consideration paid for the forty-two pounds, part of the order of seventy-two pounds first shipped. As to this claim, the lower court held that the plaintiff could not rescind the contract by reason of the fact that he retained some of the goods, relying upon the case of Elzea v. Brown, 59 Pa. Superior Ct. 403, but awarded damages for breach of the warranty, saying: "The plaintiff, however, may keep the goods which were shipped him, and set up against the seller the breach of warranty by way of recoupment in diminution of damages or in extinction of the price."

For two reasons the judgment cannot be sustained. The claim as set forth in the pleadings is based on a rescission of the contract while the court allowed the claim "by way of recoupment in diminution of damages or in extinction of the price." For a breach of warranty by the seller, there are two remedies, rescission of the contract under certain circumstances, and holding to the contract and claiming damages by way of recoupment and in diminution of or extinction of the price. The plaintiff alleged an election to re-

scind and therefore cannot recover on proofs based on a holding to the contract. The allegations and proofs must agree. There is a more serious difficulty in that the plaintiff has failed to prove any damages. There was not any evidence produced from which it could be found that the yarn which plaintiff offered to return was valueless, and in that respect this case differs from that of Quaker City S. Mills v. Lipman, supra. In fact, such evidence as was given furnished a basis for an inference that it had some value, for one hundred ten pounds of this same quality of yarn was resold at the contract price. It was incumbent upon the plaintiff to prove his damages, the measure of which was not the price paid.

Did the fact that the plaintiff retained a portion of the goods prevent him from rescinding the contract? Prior to the Sales Act there would have been an affirmative answer to this question. Counsel have not called to our attention, nor have we been able to discover, any decisions in this State which have considered the effect of the Sales Act on this rule, but the weight of authority in other states under the Uniform Sales Act is to the effect that ordinarily where a portion of the goods is retained by the buyer, he may not rescind as to the balance for breach of warranty. This rule, however, has been held to be subject to certain exceptions. The trial court disposed of the question on the theory that the rule is invariable. The precise facts relied upon to bring the case within any of the recognized exceptions are in dispute and have not been found by the court below, and we cannot infer the findings from the conclusion reached. Without such findings we cannot say as a matter of law whether the plaintiff in the present case had the right to rescind. All that we can now do is to call attention to what we believe are the controlling principles of law involved.

Prior to the adoption of the Sales Act, rescission for breach of warranty after receipt of the goods was not allowed unless stipulated in the contract, or there was fraud or an agreement to take the goods back: Kase v. John, 10 Watts 107; Freyman v. Knecht, 78 Pa. 141; Eshleman v. Lightner, 169 Pa. 46, 32 A. 63; McKnight v. Nichols, 147 Pa. 158, 23 A. 399. By Section 69 of the Sales Act (69 PS 314), a buyer for breach of warranty by the seller may "if the goods have already been received, return them or offer to return them to the seller, and recover the price or any part thereof which has been paid," provided that where the goods have been delivered to the buyer "he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer." By the 48th Section (69 PS 258), it is provided: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

There are several other sections of the act which indicate an intention to enlarge the rights of a buyer as to accepting portions of an order and rejecting the balance. Sections 7 and 8 of the act provide for situations where specific goods have perished in part or deteriorated, either before or after the agreement is made, and permit the buyer, at his option, to avoid the contract or treat it as binding as to so much of the goods as can be delivered or were delivered in ac-

cordance with the contract and pay a proportionate price for the goods retained, provided the contract was divisible. By Section 76 (69 PS 337), a divisible contract "means a contract to sell or a sale in which by its terms the price for a portion or portions of the goods less than the whole is fixed or ascertainable by computation." Likewise by the 44th Section (69 PS 254), it is provided: "Where the seller delivers to the buyer a quantity of goods larger than he contracted to sell, the buyer may accept the goods included in the contract and reject the rest, or he may reject the whole;" and "Where the seller delivers to the buyer the goods he contracted to sell, mixed with goods of a different description not included in the contract, the buyer may accept the goods which are in accordance with the contract and reject the rest, or he may reject the whole." Also, note the provisions of the 45th Section with reference to deliveries in installments.

Professor Williston, in his work on Sales (2 Williston on Sales 1285), says: "There is no single provision of the Sales Act which directly and unequivocally states that the buyer may reject a portion of goods tendered to him because of defects and accept so much of the shipment as is correct in quality." The learned author, without stating his own conclusions, refers to the cases of Portfolio v. Rubin, 233 N. Y. 439, 135 N. E. 843; Luria v. Klaff, 139 Md. 586, 115 A. 849; and Pratz v. Fisher, 244 Mass. 6, 137 N. E. 749, as supporting the proposition that a buyer may for breach of warranty, if the contract is divisible, accept a portion of the goods and reject the remainder which do not answer to the description of the goods purchased, and pay a proportionate amount of the consideration. Also, see Uniform Laws Ann.—Sales, Vol. 1, p. 271.

The facts here differ from those in the New York

case last cited only in that it is here alleged that none of the goods complied with the description of the goods purchased, yet the buyer held part of them. The basic principles, however, are the same. When we take into consideration the fact that "where goods are delivered to the buyer which he has not previously examined, he is not deemed to have accepted them unless and until he has had a reasonable opportunity of examining them for the purpose of ascertaining whether they are in conformity with the contract," (Section 47; 69 PS 257), the analogy is more apparent. Consequently, the same principles have been applied in a number of other states even though the buyer was not able to return all of the goods that did not comply with the description as provided for in the contract. In the case of Clifford v. Stewart, 153 Minn. 382, 190 N. W. 613, the plaintiff purchased a car load of flour from the defendant. Four hundred sacks were shipped and accepted when the plaintiff proceeded to sell it to third parties from the cars. Complaints of the quality of the flour being made to the plaintiff, he examined it and found that it did not comply with the warranty under which it was sold. He took back from his customers a certain number of the sacks, but not all, and offered to return all that he could, consisting of 217 sacks. Suit having been brought to recover a proportionate amount of the consideration, it was held that since the inability to return a portion of the goods was not attributable to the act of the plaintiff but to the fault of the seller, the buyer could rescind by returning the remainder and tendering the value of the goods consumed. Also, See Fiterman v. Johnson, 156 Minn. 201, 194 N. W. 399; Wilson v. Solberg, 145 Wis. 573, 130 N. W. 472; 2 Williston on Sales 1528. We also call attention to Section 400 of the Restatement of the Law of Contracts, dealing with the right of a buyer to discharge

his duty by a tender back of the chattel and requiring that the property be returned "in substantially as good condition as when received by him," which contains the following proviso: "Except so far as deterioration has been caused by the party to whom the property is tendered or by defects that are in themselves a failure to comply with the contract or offer under which the property was delivered."

We conceive the true rule to be that while there cannot be a partial rescission of an entire contract, it is not an invariable rule that there can never be a rescission of a divisible contract to sell or of a sale if it is beyond the power of the buyer to return to the seller all he received from him and if his inability so to return is not attributable to his own fault but to the fault of the seller. This construction we believe to be in accord with the fundamental principles and the spirit of the entire Sales Act and to comport with reason and justice. This would appear to be especially true where the seller delivers goods which he knows are not in accordance with the contract and the buyer is without fault. As we have pointed out above, it was held in Kase v. John, supra, and Freyman v. Knecht, supra, that at common law a buyer might rescind a contract after receipt of the goods when it was proved that the vendor knew that an article was unsound or there was other fraud. A precise rule cannot be laid down prescribing just what facts will warrant a partial rescission, but a solution must depend upon the situation in each case.

We are of the opinion that justice requires that the case be sent back for a new trial when the parties will have an opportunity to present relevant facts in harmony with our conclusions.

The judgment of the lower court is reversed and it is directed that a new trial be had.