## Bornstein v. Hanes et al.

*Isaac Ash,* for plaintiff.

*Charles A. Wolfe,* for defendants.

PARRY, J., January 21, 1939.—In March, 1931 the defendants were stockbrokers trading under the name of Charles D. Barney and Company. At that time the plaintiff who had been dealing with them for a number of years and had bought and sold securities through them on numerous occasions, was looking for a short term investment yielding a good return. On March 3, 1931 he purchased through their employee Remington five 6% bonds of the Borough of Union Beach, New Jersey, due December 1, 1933 at 90 plus accrued interest, which came to $4577.50.

Two and a half years later the plaintiff brought this suit to rescind the transaction, setting forth in his statement of claim that the defendants were the owners of the bonds and that their agent Remington had represented them to be a prime investment and a first lien on the water works of the Borough. That he had not learned otherwise until September 1, 1932 when he immediately demanded bonds of the character represented, which the defendants agreed to deliver but this they had failed to do. That on October 1, 1933 he tendered return of the bonds and demanded reimbursement in the amount of the purchase price of $4577.50. That the defendants refused to accept the tender and refused to return the purchase price.

The affidavit of defense denied the representations alleged, denied ownership of the bonds and set forth that

defendants acted merely as brokers receiving from the seller the usual commission of $12.50. The receipt of the purchase price was admitted with the averment that the defendants delivered to the plaintiff the particular bonds ordered by him and described in a written confirmation of the sale furnished to him on March 3, 1931.

Although the case has been at issue for more than five years, it did not come on for trial until January 11, 1939 when counsel for the plaintiff moved to amend the statement of claim to allow the defendants two credits against the purchase price—one of $500. being cash received from the Borough of Union Beach on February 5, 1938, when in settlement of a suit by the plaintiff against the Borough he received that sum together with certain refunding bonds of the Borough; the other of $2137.50 being the amount realized from the sale by the plaintiff of the said refunding bonds on March 30, 1938. I sustained an objection to the amendment as changing the cause of action after the period of limitation had expired, whereupon the plaintiff proceeded with his proof.

He testified that desirous of obtaining a short term investment yielding a good return such as a good bond secured by a lien on real estate, he applied to Remington who suggested the bonds in question, assuring him that they were a prime investment and were a first lien both upon the Borough's water works and upon the income from the water rents. That he had not examined the bonds when they were delivered to him but had placed them in his safe deposit box, cut the coupons as they became due and deposited them for collection.

In June and December, 1931 the coupons were honored but in June, 1932 they were returned marked "Defaulted by the Borough". He thereupon applied to the brokers who sent Remington to Union Beach with him to make an investigation. At a subsequent visit the plaintiff succeeded in obtaining the payment of the three sets of coupons then in default. Thereafter, after another de-

fault, he tendered the return of the bonds to the defendants and demanded payment of the full purchase price which tender and payment were refused, whereupon he brought this suit to September term, 1933. The plaintiff retained possession of the bonds for seven years and collected the full amount of interest due thereon, although there was delay in payment.

On April 25, 1936 the plaintiff instituted a suit against the Borough of Union Beach and on February 5, 1938 through his attorney effected a settlement of that suit as already indicated.

After the plaintiff rested the defense moved for a non-suit but the plaintiff's counsel, in his reply to the argument on the motion, requested time to prepare and submit a brief on the law. As this was impracticable the parties stipulated that a juror should be withdrawn and the case proceed before me sitting without a jury. I reserved the point involved and the defendants offered proof which amounted to a flat contradiction of any warranty with regard to the bonds. At the conclusion of the trial the parties were given five days in which to file briefs. They are now before me and I proceed to determine the questions raised.

For a breach of warranty the Sales Act provides a choice of remedies of which but two are involved here. The plaintiff was free to rescind the transaction by returning the bonds and suing for the purchase price, or affirm the contract and sue for damages for the breach. A perusal of the statement of claim makes it clear that he elected to rescind and he cannot now recover on proof based on a holding to the contract: Moskowitz v. Flock et al., 112 Pa. Superior Ct. 518.

Assuming the existence of a warranty it appears from the plaintiff's own testimony that he waited for more than a year, after he knew he had been deceived, before he elected to rescind, during which time he exercised

rights of dominion over the property inconsistent with any theory but that of ownership.

"(1) The power of avoidance for fraud or misrepresentation is lost if after acquiring knowledge thereof the injured party unreasonably delays manifesting to the other party his intention to avoid the transaction": A. L. I. Restatement of Contracts §483; Tinius Olsen Testing Machine Co. v. Wolf Co., 297 Pa. 153; Hausman et al. v. Dougherty & Sons, Inc., 96 Pa. Superior Ct. 86.

Another difficulty is the failure to prove damages under any tenable theory. The plaintiff contends that the measure of his damage is the difference between the price he paid for the bonds in March, 1931 and the amount realized as a result of his settlement of the suit instituted against the Borough of Union Beach in February 1938, but this is so clearly erroneous that it will hardly bear discussion. It is sufficient to say that the measure was the difference in value on March 3, 1931 between the bonds said to be warranted and the bonds received: Samuel v. Delaware River Steel Co., 69 Pa. Superior Ct. 605; Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468. Of this there is no proof at all.

The plaintiff relies upon Butcher v. Newburger et al., 318 Pa. 547, by which I am bound and which I follow as it states the law as to representations but it does not touch the questions of timely election and variance and so is of no application here.

In short, the plaintiff pleaded a rescission and proving that he had not rescinded, vainly attempted to change his cause of action and proceed for an inconsistent remedy upon an untenable theory of damages. These remarks dispose of the case and would seem to render any consideration of the controverted issue of fact a work of supererogation. As however I have been constituted a fact finding body, I shall venture to let fall some observations thereon.

Strange as the plaintiff's evidence with regard to the warranty may appear, it nevertheless makes a prima

facie case. But it is flatly contradicted and due effect must be given to the rule that he must prove his case by a preponderance of the evidence. He asks the Court to believe first, that he thought he could get a fairly high grade, short term bond that would yield a large return and second that relying, as he had the right, on the brokers' representation that these bonds fulfilled that description, he put them away without looking at them. I could accept this if persuaded that his was the child-like faith of youth and inexperience; and if this bond, as many do, had set forth a lengthy contract in minute script and terminology difficult to comprehend. Now the fact falls somewhat short of this. The recital in the bond is brief and sets forth in very legible type that the only security for the payment of principal and interest is the good faith and credit of the Borough of Union Beach. The plaintiff lacks neither age nor experience and such contact as he has enjoyed with the world of business, embraces daily visits to the defendants' brokerage offices from 1928 to 1931 and fifty stock and bond transactions there during that period. He may fairly be called a rather seasoned speculator and investor.

This veteran at the game of chance is really asking that full faith and credit be given to a statement that he fondly believed that a good first mortgage Municipal bond could be had in the market that would yield him about 11% at a time when such bonds, at a moderate yield, were selling at par or at a premium. While the last assault on the credulity of the Court requires the assumption that any broker reputable or otherwise, could be found, so devoid of intelligence as to hope to impose such a representation upon such a customer.

So after due consideration I think I am bound to declare that the plaintiff's evidence falls somewhat short of that degree of probative value which would justify any fact finding body in reaching a conclusion favorable to him. While on the other hand, I incline to the opinion that the evidence of the defendants' salesman, that he

made no such representations, corroborated as it is by certain undisputed circumstances, is so consonant with reason and ordinary experience that it ought to be accepted.

I therefore find for the defendants.